FILED
IN CLERKS OFFICE
2004 OCT 26 A 10: 51
U.S. DISTRICT COURT
DISTRICT OF MASS.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION No. 04-CV-11986MEL

| W. Michael Cahill, Pro-Se<br>Plaintiff,<br>v.<br><br>Verizon/ System Council T6/ Local 2222 IBEW<br>Defendant |
|---|

PLAINTIFF'S RESPONSE TO DEFENDANT RESPONSE

This is a response to the Defendants System T6 Council and Local 2222 response to Complaint from Michael Cahill's (Plaintiff) Complaint.

FACTS

Plaintiff was transferred to Malden, Massachusetts location based on the needs of the business. While in Malden Plaintiff had a meeting with his managers Dan Bradley and Thomasine Williams, and they told him that he had been made permanent and showed him his status in Verizons BA People screen, representing the Plaintiff was Bryan Humphreys (Union Representation in Malden.) After the plaintiff was made full time regular there was a large group of Central Office techs made full time regular as well for example, Greg Hamilton (CO Tech). These techs are currently full time regular employed at Verizon.

April 30, 2001 several techs were hired off the street into the same local IBEW 2222, and same position. These techs were hired full time regular. A position that the Plaintiff could have pursued if he was not already full time regular. (See Attachment A1)

The second quarter of 2001 the company declared its first surplus. Plaintiff's wife Lisa Cahill who is a manager for Verizon called Christine Lonero Manager of Labor Relations to verify the Plaintiffs status. Christine confirmed that the Plaintiff was in fact a full time regular associate. When the surplus was declared managers were informed that all temporary employees and contractors needed to be job completed. (Per the contract see attachment A)

Based on the needs of the business the company transferred the Plaintiff back to 125 High Street, Boston. Where through every day interaction he met Chris Gould a temporary tech that was transferred from the EI department because he was disabled. When Chris found out that the Plaintiff was a full time regular employee and he was not, and his net credited service date was prior to the plaintiffs. He was upset. Ken Caruso union steward and Bryan Phillips were present, and many other CO Techs. They all witnessed that the plaintiff was a "Full Time Regular Employee" and encouraged Chris to file a grievance that he did with both Ken Caruso and Lynne Meaney, this was encouraged by the Plaintiff because in Past Practices by the union and the company they would make the person who was temporary with a longer net credited service date full time regular too.

February 25, 2002 the Plaintiff was out on approved FMLA (see attachment B), and after exhausting all of his vacation time he took unpaid FMLA leave time for the birth of his son. While out his manager Ellen called to see how things were going and mentioned that his status had been changed but not to worry it would be corrected. On April 1,2002 the Plaintiff returned to work, and went into Verizon BA People screen and verified that his status had been changed to Temporary with a March date. The ECR turnaround report a payroll report utilized by Verizon that is generated for all associates will indicate this change. This report is automatically generated every time an associate has a status change or a step- raise. This report will indicate

that the Plaintiffs status was in fact changed, because in October of 2000 the report will have a T for a Temporary employee and then in October of 2001 it will contain an R as a Regular Full Time Employee. This report would be automatically generated in October of 2001, as the Plaintiff would have received his second step raise. Immediately the Plaintiff went to Thomasine Williams previous manager in Malden and asked her about it and she said not too worry that she had a print out and she would get it corrected. Then he went to Ken Caruso several times, who got Tommy Moses involved and they both agreed that a grievance should be written up, and that they needed to talk with Edward Fitzpatrick to find out how, after months went by and they continued to say they would get back to the plaintiff. Ken Caruso and Tommy Moses finally said that Edward Fitzpatrick refused to take the grievance. When the Plaintiffs classification was changed back to temporary he had been a Full Time Regular associate for more then a year. From April 2002 through December of 2002 the Plaintiff left several unreturned messages for both Myles Calvey and Edward Fitzpatrick to find out why they were refusing to accept the grievance and represent him.

In August of 2002 the company again announced an additional surplus, and enforced that all temporary associates and contractors were to be job completed, per the union contract. (Work Force Reduction Attachment A)

On October 18, 2002 after receiving no help from both the union and the company. The Plaintiff sent an email to Verizon HR Department. (See Attachment C) This email states that the Plaintiff's status was never changed.

In November 2002 the Plaintiff signed and declined the Employee Incentive Plan.

In December 2002 the Plaintiff signed and declined the second Employee Incentive Plan.

On December 27, 2002 the Plaintiff was laid off along with 3500 associates, and then did not receive the Incentive package as all other associates did that declined the incentive.

In July of 2003, the union won in arbitrations and Verizon was instructed to hire back all full time regular associates.

On October 27, 2003 the Plaintiff sent a letter to Ivan Seidenberg requesting assistance to be reinstated. This was referred to Paul McGovern who then verbal notified the Plaintiff that a mistake had been made. (See Attachment D)

In May of 2004 Attorney Kathleen Roberts sent Verizon a letter on behalf of the Plaintiff and (see attached E) and Amy Seifer legal counsel for Verizon confirms that after the first surplus was declared the Plaintiffs status was changed from full Time Regular to Temporary. Only authorized personnel have access to this system, and only authorized personnel can make changes.

ARGUMENT

Verizon and the union do not have a formal process of making an associate Temporary to Full Time Regular. The Plaintiff was made Full Time Regular and was told this by both of his managers in the presence of fellow union member as representation. The Plaintiff was full time regular for over a year, and made life decisions based on his employment status. (i.e. having a second child and purchasing a home.) The defendant Verizon/ System Council T6 Local 2222 needs to take ownership that they refused to represent the plaintiff a member of local 2222 and paid dues until the date he was laid off on December 27, 2002. If the union did not recognize the Plaintiff as a full time associate then why was if not grieved that he was still on

payroll during the steps taken for the work force reduction, and why was the Plaintiff laid off with all regular associates. The Union also recognized that the Plaintiff was full time regular when they accepted the grievance from Chris Gould. After numerous requests for the plaintiff to be made whole, the plaintiff is now due past and current contract wages (contract expires in 2008), health benefits and all other benefits that he would have received if the company did not change his status from a full time regular employee after the surplus was declared.

## CONCLUSION

For the above-stated reasons, the Plaintiff respectfully requests that the Defendant responds to this additional information that has been provided to System Council T6/ Verizon Local 2222.

W. Michael Cahill

W. Michael Cahill, Pro-Se
12 Whitewood Circle
Amesbury, MA 01913
(978) 388-4405

Dated: October 26, 2004

Certificate of Service

I, W. Michael Cahill, Pro-Se, do hereby certify that on this 26th day of October, 2004 I delivered by first-class mail, postage pre-paid, a copy of the above document to Matthew L. Adams, Foley HOAG LLP, 155 Seaport Boulevard, Boston, MA 02110.

W. Michael Cahill Pro-Se

Attachment A1



**EMPLOYMENT & STAFFING**
Temporary Employee Statement

I understand that I am being engaged as a temporary employee for a specific project for a limited period. I further understand that my employment may continue through __________________, or may be terminated upon completion, postponement, cancellation, or geographic relocation of the project whichever comes first.

I am fully aware that I am being hired as a temporary employee and, as such, will not be given any preference for regular employment. I understand that my application for regular employment will be considered along with those of all other applicants for regular employment.

The differences in benefits entitlement between a regular and temporary employee have been explained to me.

| Signature: [signature] | Date: 10/11/00 |
|---|---|

ATTACHMENT A.

# ARTICLE G25
## Force Adjustment Plan

### GENERAL

If, during the term of this Agreement, the Company notifies the Union in writing that technological change (defined as changes in equipment or methods of operation) has or will create a surplus of any job title in any work location which will necessitate layoffs or involuntary permanent reassignments of regular employees to different job titles involving a reduction in pay or to work locations requiring a change of residence, or if a force surplus or force rearrangement necessitating any of the above actions exists for reasons other than technological change, the Company shall provide the Union with the job title(s) and work location(s) affected, together with the names and net credited service dates of all employees in the affected job title(s) in the surplus location(s). In addition, if the surplus condition is caused by an External Event as these terms are defined in the letter of agreement dated August 5, 1994, the Company shall so notify the Union in writing. The Company shall take the following steps, in the order indicated below, to the extent necessary to eliminate the surplus or accomplish the force rearrangement.

**G25.01.** The Company will implement the provisions of Article G23 ("Income Protection Plan"), except that:

(a) The replacement employee referenced in Article G23.01(b) can be in a surplus job title at a nonsurplus location and must be obtained from the canvass set forth in paragraph G25.02(b) below.

(b) The Company may implement paragraphs G23.01(a) and (b) at the same time.

Note: If a surplus is declared in a job title at a work location where an administrative work group in the surplus job title consists of employees reporting to other work locations and such employees are normally assigned to a common work area, all such work locations shall be considered as a single work location for purposes of the Force Adjustment Plan.

**G25.02** If the implementation of paragraph G25.01 above does not eliminate the surplus, the following steps shall be taken in the following order:



(a) Rated employees at all locations within the bidding area where rated employees are surplus may, to the extent of the number of rated employees who are surplus, assert seniority of rating rights to displace employees in the same job title permanently assigned within the bidding area.

(b) The Company will conduct a simultaneous canvass at all surplus locations within each Union Local area where a surplus exists. Employees at surplus locations may assert seniority rights to transfer to jobs made available by the Company for which they are qualified. Such jobs will include, but are not limited to, the following:

(1) Jobs where there is a need resulting from the implementation of paragraph G25.01(b) above.

(2) Jobs in the surplus job title held by the most junior employees in the Union Local area, equivalent to the number of surplus employees in the job title in the Union Local area. However, an employee at a surplus location, at the time such employee is canvassed, cannot transfer to a job held by one of the identified junior employees if such junior employee is also at a surplus location.

(3) Notwithstanding any other provisions of the Labor Agreement, jobs identified by the Company which would result if the Company work completed or laid off certain temporary employees within the Union Local area, both within and outside of the surplus bargaining unit.

**G25.03** If the implementation of paragraphs G25.01 and G25.02 does not eliminate the surplus, the provisions of Article G24.03 - G24.0[illegible] ("Job Bank") will apply except that the vacancies made available by the Company can be at a higher pension band than the job titles in which the surplus exists and can include vacancies from the NYNEX Job Bank.

(a) Notwithstanding any other provision of the Labor Agreement, the Job Bank (Article G24.03) may include openings and vacancies covered by this Labor Agreement and vacancies that would result if the Company work completed or laid off temporary employees, both within and outside of the surplus bargaining unit.

**Verizon**
**Absence Reporting Center**

03/20/2002

MICHAEL CAHILL
12 White Wood Cir
Amesbury MA 01913

Re.: Absence of **02/25/2002** 033521050

Dear Michael Cahill

The absence for the period indicated above has been approved for FMLA leave. This absence will not be subject to the provisions of the Absence Control Plan, unless it exceeds the duration of your remaining FMLA entitlement.

While this absence has been approved for FMLA leave, you may or may not be entitled to payment under the Company's benefit policies and programs.

cc: FMLA_K0Q501000

Attachment C Page 1 of 3



Lisa M. Cahill
10/18/2002 03:19 PM

To: HR Help Line/VEND/NY/Verizon@VZNotes
cc:
Subject:

Hello:

I am looking for some help.

I was hired by Verizon on 10/30/00 as a Temporary Central Office Technician located in Malden, Massachusetts. In January 2001 my manager informed me that I was made permanent, and he showed it to me on the BAPeople screen. My 401K was reflected upon this change.

In March of 2002 when I was in BAPeople I accessed my personal information and noticed that my status had changed to Temporary with a March date. I asked my current Supervisor in regards to this change, and she wasn't sure who changed my status or how could I get it corrected, and never addressed the issue again. When I asked them again about it she told me that she would look into, and again never addressed the issue again. I also went to the union, who said that they would look into it, and I have not heard back from them. I was officially made permanent and no one will address or correct my situation.

This is a huge integrity issue! The company has since filled positions for CO Techs of Permanent status that I would have qualified for in the event I was still temporary.

I need assistance as to where to go get this matter resolved. In December there is most likely going to be a layoff and I will be impacted by that, and If I cannot get this resolved the company will just complete my employment rather then laying me off, which means that I would not get the opportunity to be called back.

Can the company legally change my status with out my notification? Please help me with this!

Thanks,
Mike Cahill
978 388 0605

Attachment C Page 2

Satuane N. Scott
10/18/2002 03:38 PM

To: lisa.m.cahill@core.verizon.com
cc:
Subject: HR Help Line Response

The answer to your question: is:

I checked the system and it does not show any change in your status since you started in 2000. It shows you being a temporary employee for a term of 2 years. There have been no changes from 2000 to present. What you have to do is go to your supervisor and let them know that they need to speak with your hr business partner for your organization to find out how you are supposed to be classified.

You may refer to this question as Call Report #SNST-5F2QT3

Attachment C Page 3




To: Lisa M. Cahill/ARL/SDA@VZNotes
cc:
Subject: Re: HR Help Line Response

It means that he is a temporary employee from Oct. 30, 2000 to Oct. 30, 2002.
Lisa M. Cahill



Lisa M. Cahill
10/18/2002 03:50 PM

To: Satuane N. Scott/EMPL/NY/Verizon@VZNotes
cc:
Subject: Re: HR Help Line Response

What does it mean a term for 2 years?
Satuane N. Scott



Satuane N. Scott
10/18/2002 03:38 PM

To: lisa.m.cahill@core.verizon.com
cc:
Subject: HR Help Line Response

The answer to your question: is:

I checked the system and it does not show any change in your status since you started in 2000. It shows you being a temporary employee for a term of 2 years. There have been no changes from 2000 to present. What you have to do is go to your supervisor and let them know that they need to speak with your hr business partner for your organization to find out how you are supposed to be classified.

You may refer to this question as Call Report #SNST-5F2QT3

Attachment D
Page 1 of 6

**SENDER: *COMPLETE THIS SECTION***

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Ivan Seidenberg
1095 Ave of the Americas
floor 39 Rm 3919
New York, NY 10036

2. Article Number
(*Trans*

PS Form

***COMPLETE THIS SECTION ON DELIVERY***

A. Signature
X E. Vargas ☐ Agent ☐ Addressee

B. Received by (*Printed Name*)

C. Date of Delivery
11-12-03

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☒ Certified Mail ☐ Express Mail
☐ Registered ☒ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.

4. Restricted Delivery? (*Extra Fee*) ☐ Yes

595-02-M-1540



----- Original Message -----
**From:** Mike Cahill
**To:** paul.s.mcgovern@verizon.com
**Cc:** Ivan.Seidenberg@verizon.com ;
**Sent:** Tuesday, December 16, 2003 7:29 PM
**Subject:** Michael Cahill

Hello:
I am writing to you in regards to my original letter to Ivan, see attached. Paul contacted my home on November 25, 2003 to let me know that my letter had been received by his dept, and that all of the people that would need to address it were on vacation. On December 8, 2003 I called Paul again and he returned my call stating that he would be back to me shortly, as I am patiently waiting;

However, if I do not receive some action this week I am going to file a complaint with the Federal EEO, and to an attorney because my time table with both is running out , and I am still out of work.

Christmas is next week, and December 27 marks one year since I was laid off by Verizon with all of its other "Regular Employees". As stated in my previous emails in May of 2001 Verizon had originally declared a surplus, and it was at this point that my wife who is a manager at Verizon called another manager at Verizon Christine Lonero who confirmed that I was made permanent. At this time the company also stated per the contract (Article A11) that all temporary employees needed to be off of payroll.

I would also like you to view (Article G12) where it states that the company will notify the employee if they are going to diminish or reduce benefits, and this will be done in the presents of a union steward. I was never notified that I was going to be changed from Permanent to Temporary, and I never consented to this. All of my coworkers can verify that I was permanent in BA People, and previous managers have printouts of this.

Another area that I would like you to view is the fact if I was permanent on April 30 of 2001, when at least 6 Central Office Technicians were hired off of the street. I would have applied for one of those positions where I would have been given a permanent position and consideration as stated in both (G30.05 and G30.06) These techs are now back at work, and I am on the street.

There are many managers, as stated in my previous letters to HR and Ivan, that are well aware of my situation, and are well aware that I was made permanent, and there are many Central Office Technicians that are aware of this as well. I am only fighting to get what I am rightfully owed, as the arbitrators did to get everyone's job back. I being treated extremely unfair, and I feel as though I am being discriminated against, and I really would like to know why.

I hope to hear from you in regards to this.
Mike Cahill
978-388-4405

D3

associate needed to be made permanent to then they would just make them both permanent, just like if someone was hired at a higher rate of pay then employees at the same experience level were already at they are all brought up to the same rate. And the company was told long before this to get rid of all temporary employees, and because I was permanent I was still on payroll.

Today in the Salem Evening News they are hiring Customer Service Representatives, "Temporary Full Time." with a possibility of becoming permanent!

You can only imagine how this makes me feel.

I look forward to hearing from you soon.

Michael Cahill



978-388-4405 Mike Cahill H.R. Letter.pc





"Mike Cahill" <mkchll@adelphia.net> on 10/27/2003 07:37:22 PM

one July 30 people back to work

To: Lisa M. Cahill/EMPL/MA/Verizon@VZNotes
cc:
Subject: Fw: Mike Cahill Central Office Tech

----- Original Message -----
**From:** Mike Cahill
**To:** Ivan.Seidenberg@verizon.com
**Cc:** mkchll@adelphia.net
**Sent:** Monday, October 27, 2003 7:34 PM
**Subject:** Mike Cahill Central Office Tech

October 27, 2003

Dear Mr. Seidenberg:

I write you this letter, requesting your help, as I understand that you are a person of integrity. I am regretfully a former employee; I was laid off on December 27, 2002, along with many other thousands of union employees. About three weeks ago I collected my last unemployment check, as I am sure that you are well aware of the unemployment lines are very long these days, and jobs are few and far between. The last week in July all of those thousands of employees were called back to work, with back pay, all that is except me. Prior to my separation with Verizon I asked for help from many people (including managers and union stewards), and no one wanted to get involved! Was it because in the spring of 2002, I hurt my back off the job, and was FMLA approved and out of work?

I am going to make this very brief but I am going to scan one of my original cries for help to the HR line for you to view. The HR helpline responded that they could not find any detail, other than that I was hired as a temporary employee. I realize how I was hired, but I know I was made permanent as does Thomasine Williams, Dan Bradley, Christine Lonero, Kathy Littlefield, and Robert Panarelli.

In October 2000, I was hired as a Central Office Technician for your CATC Office in Malden, MA. I was hired as a temporary employee, and not to long after that I was called in to the office by my managers Thomasine Williams and Dan Bradley and was told that I was made permanent. Thomasine Williams even had a print out of my permanent status that she had in my file. In December I was transferred to 125 High St (Based on the needs of the business) temporarily to help out, but as a permanent employee. Through everyday interaction it was determined that there was another CO Tech that worked in the Boston CATC that was still temporary
that was hired before me. After I showed the BA People screen to several union employees to prove that I was permanent. He went to the union, who

filed a grievance, and after being out with my back I came back and was checking BA PEOPLE and discovered that I was changed to temporary. As you can see in my letter to human resources my wife who also works for the company verified with Christine Lonero (an HR Manager) some time before this that I was permanent, and I was told by more then one manager that I was a permanent employee, and when this issue came up Thomasine approached me and said that she had a copy of the BA People screen reflecting my permanent status. I asked her for a copy several times, and each time she said she would get me a copy.

Although I was extremely upset before I was laid off, that Verizon was doing this to me. I did not know where to turn. I did not want to cause a huge scene as my wife is a manager for another office, and I new I was being laid off regardless. I never received the employee separation incentive package(EIPP), because I was changed to a temporary employee, and now when other people who were hired after me in other job locations were hired permanently for the same job, and now have there jobs back plus back pay, I do not. When these employees were hired I would have applied for a permanent position within the company, but did not because I was already permanent. These CO Techs are also in the same union local that I was, but were part of VADI. When I went to the union about this the union said that the company made a mistake in making me permanent, but did not know why I was changed, and again would get back to me. Did the union and the company have a side deal? Did the company not want to make the other guy permanent and took it out on me? I do not know, but I know that the company told me I was permanent! And when my manager/ managers tell me something I believe them.

Everyone that I have spoken to states that the company cannot make someone permanent and then temporary. I was never informed by any of the Managers that I was made Temporary, and when I confronted them they said they would check into it, and would never get back to me.

Can you please tell me why I am being discriminated against? I like the others have children at home, a mortgage, etc., but everyone is saying it is someone else's problem.

This week I would have 3 years with Verizon, and would be making $977.00 a week, and would have just received the 3% salary bonus.

Can you please help me with this? This is something that I cannot let go, I really feel that I was for some reason I was discriminated against, because I know in the past if the company made someone permanent and another associate needed to be made permanent to then they would just make them both permanent, just like if someone was hired at a higher rate of pay then employees at the same experience level were already at they are all brought up to the same rate. And the company was told long before this to get rid of all temporary employees, and because I was permanent I was still on payroll.

Today in the Salem Evening News they are hiring Customer Service

Attachment E

Page 1 from Amy Seifer

>
>
>
>
>

Lisa: I just received a Fax from Amy Seifer. I will quote it in its entirety:

Dear Attorney Roberts:

I am in receive of your letter to Marc Reed dated March 10, 2004 regarding Michel Cahill, and have looked into the matters reaised in your letter.

Firstly, with regard to the FMLA issue--Mr. Cahill was not on an approved FMLA leave in March, 2002 for child care reasons. REcords indicate a

7/18/2004

D6

Representatives, "Temporary Full Time." with a possibility of becoming permanent!

You can only imagine how this makes me feel.

I look forward to hearing from you soon.

Michael Cahill

978-388-4405 Mike Cahill H.R. Letter.pd

Attachment 5

brief
lerave for depression in February of 2002, and a leave in June 2002 for
back
strain.

As for your client's job classification, he was hired as a termporary employee in October 2000. Based on mu inquiries to field managers and personnel in Labor Relations, I have concluded that there was never ay authorized change in Mr. Cahill's satus from temporary to permanent. A clerical error did result in the need for a change in the payrol coding system to reflect his temporary status. Company records indicate tha this change was made on December 31, 2001, months before the aforemention leaves. MOreover, the 401(k) issue you raise is not dispositive of this job
classification issue, cinsce some temporary employees do receive a Comp match. The Union's failure to grieve this issue on Mr. Cahill's behalf demonstrates that the Union similarly concluded that Mr. Cahill's status was
always intended to be temporary. Please note that Mr. Cahill's rememdy wouldhave been through the grievance and arbitration proces of the applicable collective bargaining agreement, but this remedy was not pursued,
was not preserved, and is no longer available to him.
[vty, Amy D. Seifer, associate general counsel]

It doesn't appear that they would be receptive to your earlier suggestion.

If you perceive this otherwise, please let me know. KR

---

FREE pop-up blocking with the new MSN Toolbar ? get it now!
http://toolbar.msn.com/go/onm00200415ave/direct/01/

Page 2 from Amy Seifer

Attachment 5

brief
lerave for depression in February of 2002, and a leave in June 2002 for
back
strain.

As for your client's job classification, he was hired as a termporary employee in October 2000. Based on mu inquiries to field managers and personnel in Labor Relations, I have concluded that there was never ay authorized change in Mr. Cahill's satus from temporary to permanent. A clerical error did result in the need for a change in the payrol coding system to reflect his temporary status. Company records indicate tha this change was made on December 31, 2001, months before the aforementione leaves. MOreover, the 401(k) issue you raise is not dispositive of this job
classification issue, cinsce some temporary employees do receive a Compa match. The Union's failure to grieve this issue on Mr. Cahill's behalf demonstrates that the Union similarly concluded that Mr. Cahill's status was
always intended to be temporary. Please note that Mr. Cahill's rememdy wouldhave been through the grievance and arbitration proces of the applicable collective bargaining agreement, but this remedy was not pursued,
was not preserved, and is no longer available to him.
[vty, Amy D. Seifer, associate general counsel]

It doesn't appear that they would be receptive to your earlier suggestion.

If you perceive this otherwise, please let me know. KR

---

FREE pop-up blocking with the new MSN Toolbar ? get it now!
http://toolbar.msn.com/go/onm00200415ave/direct/01/

Page 2 from Amy Seifer

Attachment 5

brief
lerave for depression in February of 2002, and a leave in June 2002 for
back
strain.

As for your client's job classification, he was hired as a termporary employee in October 2000. Based on mu inquiries to field managers and personnel in Labor Relations, I have concluded that there was never ay authorized change in Mr. Cahill's satus from temporary to permanent. A clerical error did result in the need for a change in the payrol coding system to reflect his temporary status. Company records indicate tha this change was made on December 31, 2001, months before the aforementione leaves. MOreover, the 401(k) issue you raise is not dispositive of this job
classification issue, cinsce some temporary employees do receive a Compa match. The Union's failure to grieve this issue on Mr. Cahill's behalf demonstrates that the Union similarly concluded that Mr. Cahill's status was
always intended to be temporary. Please note that Mr. Cahill's rememdy wouldhave been through the grievance and arbitration proces of the applicable collective bargaining agreement, but this remedy was not pursued,
was not preserved, and is no longer available to him.
[vty, Amy D. Seifer, associate general counsel]

It doesn't appear that they would be receptive to your earlier suggestion.

If you perceive this otherwise, please let me know. KR

---

FREE pop-up blocking with the new MSN Toolbar ? get it now!
http://toolbar.msn.com/go/onm00200415ave/direct/01/

Page 2 from Amy Seifer

Attachment 5

brief
lerave for depression in February of 2002, and a leave in June 2002 for
backK
strain.

As for your client's job classification, he was hired as a termporary employee in October 2000. Based on mu inquiries to field managers and personnel in Labor Relations, I have concluded that there was never ay authorized change in Mr. Cahill's satus from temporary to permanent. A clerical error did result in the need for a change in the payrol coding system to reflect his temporary status. Company records indicate tha this change was made on December 31, 2001, months before the aforementione leaves. MOreover, the 401(k) issue you raise is not dispositive of this job
classification issue, cinsce some temporary employees do receive a Compa match. The Union's failure to grieve this issue on Mr. Cahill's behalf demonstrates that the Union similarly concluded that Mr. Cahill's status was
always intended to be temporary. Please note that Mr. Cahill's rememdy wouldhave been through the grievance and arbitration proces of the applicable collective bargaining agreement, but this remedy was not pursued,
was not preserved, and is no longer available to him.
[vty, Amy D. Seifer, associate general counsel]

It doesn't appear that they would be receptive to your earlier suggestion.

If you perceive this otherwise, please let me know. KR

---

FREE pop-up blocking with the new MSN Toolbar ? get it now!
http://toolbar.msn.com/go/onm00200415ave/direct/01/

Page 2 from Amy Seifer